**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

JAMES CARSON & ERIC LUCERO,
Plaintiffs,
v.

STEVE SIMON, Secretary of State of the State of Minnesota, in his official capacity,
Defendant.

Civil Action No. 0:20-cv-02030

**COMPLAINT**

Plaintiffs, James Carson and Eric Lucero, allege and state as follows:

## NATURE OF THE ACTION

1. The Constitution delegates to Congress the power to set the "Times" of presidential elections and to state legislatures the power to set their "Manner." The Minnesota Secretary of State is neither Congress nor the Minnesota Legislature, yet he has agreed with private parties to rewrite the times and manner of elections in Minnesota. This agreement, and the policies the Secretary is enforcing under it, are unconstitutional and preempted by federal law.

2. The Minnesota Legislature has established a bright-line deadline of 8:00 p.m. on November 3, 2020—the Election Day Congress set by law—for mail-in ballots to *arrive* at polling places. Ballots that fail to meet this deadline are not to be counted. The Secretary, however, has unilaterally moved that deadline *eight days*, in conflict both with State statute and the very regulations the Secretary has promulgated to implement it (which acknowledge the 8:00 p.m. deadline). This is a federal constitutional violation because Article II mandates that Congress and state legislatures set the times and manner of elections. The Secretary has no such authority, and his agreement to violate Minnesota law is *ultra vires*.

3. The agreement is also in conflict with federal law. Congress set one Election Day, November 3, and voting after that date conflicts with that choice. The Secretary has agreed, not only to count ballots that arrive eight days after Election Day, but also to count ballots that were not *cast* on Election Day. The Secretary will, according to his agreement, count ballots with no post mark and no evidence of having been cast on November 3. This means that persons in Minnesota may vote for days after Election Day and have their votes counted.

4. This agreement threatens the integrity of the upcoming election, will result in widespread and severe vote dilution, will (at a minimum) create substantial uncertainty and delay over Minnesota's ability to certify its results, and casts in substantial doubt whether the United States Congress will even accept the results of the popular vote in Minnesota, even though it was clearly the Minnesota Legislature's intent to satisfy a statutory safe harbor binding Congress to the popular vote. Plaintiffs, registered voters in Minnesota and certified electors, will be irreparably harmed in all of these ways and respectfully request that the Court declare the Secretary's agreement unlawful and enjoin it.

## JURISDICTION AND VENUE

5. This action arises under the United States Constitution, 42 U.S.C. § 1983, and the doctrine recognized in *Ex Parte Young*, 209 U.S. 123 (1908). Jurisdiction is proper under 28 U.S.C. § 1331 because the plaintiffs' claims arise under the United States Constitution.

6. Venue is proper under 28 U.S.C. § 1391(b) in this Court because the defendant resides in this district and the events or omissions giving rise to the claim occurred in this district.

## PARTIES

7. Plaintiff James Carson is a resident of Ramsey County, Minnesota, and a registered Minnesota voter. Mr. Carson has also been certified pursuant to Minn. Stat. § 208.03 as a nominee of the Republican Party to be an elector for the State of Minnesota in the 2020 presidential election.

8. Plaintiff Eric Lucero is a resident of Wright County, Minnesota, and a registered Minnesota voter. Mr. Carson represents Minnesota Legislative District 30B in the Minnesota House of Representatives, and has also been certified pursuant to Minn. Stat. § 208.03 as a nominee of the Republican Party to be an elector for the State of Minnesota in the 2020 presidential election.

9. Defendant Steve Simon ("the Secretary") is the Secretary of State of Minnesota and is named as a Defendant in his official capacity. The Secretary is the State's chief elections administrator and administers election laws in Minnesota. Among other duties, he "adopt[s] rules establishing the form, content, and type size and style for the printing of blank applications for absentee ballots . . . certificates of eligibility to vote by absentee ballot . . . and directions for casting an absentee ballot." Minn. Stat. § 203B.09. The Secretary is also responsible for "adopt[ing] rules establishing procedures to be followed by county auditors and municipal clerks to assure accurate and timely return of absentee ballots." *Id.* § 203B.08 subd. 4. The Secretary has acted under color of state law at all times relevant to this action.

## FACTUAL ALLEGATIONS

### A. Federal Law Establishes an Election Day and Prohibits Voting After Election Day

10. The executive power of the United States is vested in the President.

11. The Constitution establishes state and federal roles for the promulgation of the law governing presidential elections.

12. The states' role is governed by Article II, § 1, cl. 2, which provides that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress."

13. The term "Legislature" in this provision means what it says. The legislature of each state, not its executive actors or courts, has authority to define the "Manner" of choosing electors. *See, e.g.*, *McPherson v. Blacker*, 146 U.S. 1, 25 (1892).

14. The role of Congress is governed by Article II, § 1, cl. 4, which provides that "Congress may determine the Time of chusing the Electors, and the Day on which they shall give their Votes; which Day shall be the same throughout the United States."

15. Congress has acted under this authority to set the time of choosing electors, which is now accomplished in all states by some form of popular vote.

16. Various statutes, taken together, "mandate[] holding all congressional and Presidential elections on a single November day." *Foster v. Love*, 522 U.S. 67, 67 (1997). This "immediate act of the people of America" protects the selection of the President from "cabal, intrigue, and corruption." Federalist 68 (Hamilton).

17. Further, it is "without question [that] Congress has the authority to compel states to hold these elections on the dates it specifies." *Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1170 (9th Cir. 2001). And courts have long-rejected laws which "purport[] to extend beyond the election day the time within which voters' ballots may be received by the election officials for the election of presidential electors" because such actions "conflict with the constitutional congressional Act which requires the electing be done on election day." *Maddox v. Bd. of State Canvassers*, 149 P.2d 112, 114 (Mont. 1944).

18. In a statute setting the familiar Election Day, Congress provided that "[t]he electors of President and Vice President shall be appointed, in each State, on the Tuesday next after the first Monday in November, in every fourth year succeeding every election of a President and Vice President." 3 U.S.C. § 1.

19. As applied in the year 2020, this statute sets Tuesday, November 3, as Election Day.

20. This statute necessarily forbids states from holding votes for the presidency *after* November 3. Another statute provides: "Whenever any State has held an election for the purpose of choosing electors, and has failed to make a choice on the day prescribed by law, the electors may be appointed on a subsequent day in such a manner as the legislature of such State may direct." 3 U.S.C. § 2.

21. This statute only applies if a state has held an election and failed "to make a choice on the day prescribed by law…." It does not authorize states to allow voting in that election on days after the Tuesday after the first Monday in November.

22. Congress also set the time for electors appointed in each state to meet an vote: "The electors of President and Vice President of each State shall meet and give their votes on the first Monday after the second Wednesday in December next following their appointment at such place in each State as the legislature of such State shall direct." 3 U.S.C. § 7.

23. As applied in the year 2020, the date for electors to meet and vote is December 14.

24. A state that fails to comply with these acts of Congress forfeits its votes in the Electoral College.

25. Congress also provided a statutory safe harbor to allow states to provide a binding determination of its electors' vote. 3 U.S.C. § 5.

26. To qualify for the safe harbor, a state must have "provided, by laws enacted prior to the day fixed for the appointment of electors" a means of determining "any controversy or contest concerning the appointment of" electors, and must have completed the process "at least six days before the time fixed for the meeting of the electors." 3 U.S.C. § 5.

27. As applied in the year 2020, the safe-harbor deadline is December 8.

**B. Minnesota State Law Requires Ballots to Be Received by Election Day To Be Counted in Presidential Contests**

28. For purposes of Article II, § 1, cl. 2, the "Legislature" of Minnesota is the Minnesota Legislature.

29. The Minnesota Legislature has exercised its constitutional duty to establish rules governing the manner of presidential elections.

30. Minnesota assigns all of its electors to the presidential candidate who receives the "highest number of votes" in the statewide vote. Minn. Stat. § 208.05

31. As to the time of elections, the Minnesota Legislature has followed the law of Congress.

32. Minnesota statutes, like federal law, set the state general election as the first Tuesday after the first Monday of November in each even-numbered year. Minn. Stat. § 204d.03 Subd. 2.

33. Voters may vote in person at polling places set up in each precinct. *Id.* § 204B.16. Minnesota law requires that polling places be interspersed through the population to ensure that "no voter is required to go to more than one polling place to vote" if elections for multiple offices are held on the same day. *Id.*; *see also id.* § 204B.14.

34. Voters who vote in person on Election Day must be in line at the polling place before 8:00 p.m. on voting day, when the polls close. *Id.* § 204C.05. "No

individual who comes to the polling place or to a line outside the polling place after the time when voting is scheduled to end shall be allowed to vote." *Id.*, subd. 2(a). In-person voting is not permitted after Election Day.

35. Minnesota law authorizes in-person absentee voting "during the 46 days before the election," *id.* § 203b.081, and also authorizes absentee voting by mail. Chapter 203B of the Minnesota Statutes permits Minnesota voters to vote absentee by mail and permits voters to either request an absentee ballot for a particular election or to request "permanent absentee voter status." *Id.* § 203B.04 subd. 5. Minnesota law permits any "person who is qualified under United States Code, title 42, section 1973aa-1, to vote for the offices of president and vice-president" to cast that vote "by absentee ballot…" Minn. R. 8210.0100.

36. Minnesota law requires county officials to prepare absentee ballot applications, as well as print and distribute absentee ballots to those voters who have requested them by mail. Minn. Stat. §§ 203B.04, 203B.06

37. No different from voters who elect to vote in person, those who elect to vote by mail must vote on or before Election Day, not after Election Day.

38. The law requires any ballot received on Election Day "either (1) after 3:00 p.m., if delivered in person; or (2) after 8:00 p.m., if delivered by mail or package delivery service, [to]be marked as received late by the county auditor or municipal clerk" and requires that any such late ballot "must not be delivered to the ballot board." *Id.* § 203B.08 subd. 3, *see also* §§ 204B.45–46. Ballots that are not delivered to the ballot board are not counted. In this way, the law enacted by the Minnesota Legislature does not permit the counting of votes contained in absentee ballots received after the 8:00 p.m. deadline.

39. The Secretary of State is required to "adopt rules establishing procedures to be followed by county auditors and municipal clerks to assure accurate and timely return of absentee ballots." *Id.* § 203B.08 subd. 4. Those rules must be consistent with Minnesota and federal statutes

40. The Secretary has promulgated rules establishing election procedures, and they are consistent with Minnesota and federal statutes.

41. These regulations reinforce the Election Day receipt deadline, ordering municipal clerks to "communicate with the United States postal service facility serving the municipality with regard to the handling of absentee ballot return envelopes" and to "take all reasonable steps to ensure that all return envelopes received by the post office before 4 p.m. on election day are delivered before the closing of the polls to the ballot board." Minn. R. 8210.2500. The regulations are clear: ballots "received after election day shall be marked as received late…and must not be delivered to the ballot board." *Id.* Additionally, any absentee ballot return envelopes "delivered in person by an absent voter or an agent must be received by the county auditor or municipal clerk by 3:00 p.m. on election day," *id.* at 8210.2200.

42. These regulations demonstrate that the Secretary understands Minnesota statutes to establish a non-negotiable deadline of receipt of ballots by 8:00 p.m. on Election Day.

**C. The Minnesota Consent Decree**

43. In May 2020, a group of registered Minnesota voters and the Minnesota Alliance for Retired Americans Educational Fund ("the State Plaintiffs") filed a complaint against the Secretary in Minnesota state court. *LaRose v. Simon*, No. 62-CV-20-3190, Minn. 2d Judicial Cir., County of Ramsey (May 13, 2020).

44. The complaint challenged, *inter alia*, the Election Day receipt requirements applicable to absentee votes. Minn. Stat. § 203B.08, Compl. ¶ 5.

45. Rather than contest the complaint, the Secretary entered into a consent decree ("the Consent Decree") with the State Plaintiffs which provides that, "[f]or the November General Election [Secretary Simon] shall not enforce the Election Day Receipt Deadline for mail-in ballots, as set out in Minn. Stat. §§ 203B.08 subd. 3, 204B.45, and 204B.46 and Minn. R. § 8210.2220 subp. 1, and 8210.3000, that ballots shall be received by 8:00 p.m. on Election Day…" *LaRose v. Simon*, 62-CV-20-3149, Minn. 2d Judicial Cir., Consent Decree, VI.B, June 16, 2020.

46. Under the Consent Decree, the Secretary must "issue guidance instructing all relevant local election officials to count all mail-in ballots in the November General Election that are otherwise validly cast and postmarked on or before Election Day but received by 8 p.m. within 5 business days of Election Day (i.e., seven calendar days, or one week." *Id.* at VI.D.

47. Additionally, the Consent Decree provides that, when "a ballot does not bear a postmark date, the election official reviewing the ballot should presume that it was mailed on or before Election Day unless the preponderance of the evidence demonstrates it was mailed after Election Day." *Id.*

48. The Court approved the Consent Decree on August 3, 2020. The Court made no findings concerning the Consent Decree; it did not determine on the merits that the 8:00 p.m. receipt deadline violates the U.S Constitution or any other law regulating elections. *LaRose v. Simon*, 62-CV-20-3149, Minn. 2d Judicial Cir., Order, August 3, 2020.

49. The Court's August 3, 2020 order recognized that it "is undisputed" under Minnesota law that a consent decree is a private agreement, not a court judgment.

*Id.* at 17 ("[T]he court does not, in a consent decree, judicially determine the rights of the parties.") (quoting *Hentschel v. Smith*, 153 N.W.2d 199, 206 (Minn. 1967))).

50. The Consent Decree is nothing but a contract between the Secretary of State and certain voters prohibiting the Secretary of State from enforcing Minnesota law.

51. The Secretary has chosen to abandon the enforcement of statutes enacted by the Minnesota Legislature.

52. In accordance with the Consent Decree, the Secretary has issued guidance to voters explaining that "[f]or the November 3, 2020 General Election, [a voter's] returned ballot must be postmarked on or before Election Day and received by your county within seven days after Election Day."[1] The guidance is posted on the Secretary's website, included in voter outreach materials which may be distributed in the community, and included in the absentee ballot mailers sent to voters.

**D. The Consent Decree Conflicts with Federal Law**

53. Article II delegates the power to enact rules regulating the manner and time of elections to each state legislature and Congress, respectively.

54. The Secretary is neither Congress nor the legislature of Minnesota.

55. The State Plaintiffs with whom the Secretary contracted to change state law are neither Congress nor the legislature of Minnesota.

56. The court that entered the Consent Decree is neither Congress nor the Minnesota legislature. Nor did that court take any independent act in vetting the decree.

[1] *See, e.g.*, "Vote Early by Absentee Ballot," available at https://www.sos.state.mn.us/media/4270/vote-early-by-absentee-ballot-2020-rev9-20.pdf (Sep. 2020).

57. The Consent Decree, and the policy it enacts, is not promulgated by either Congress or the Minnesota Legislature and is *ultra vires*.

58. The law enacted by the Minnesota Legislature provides an 8:00 p.m. deadline on Election Day for mail-in ballots to *arrive*. This law is the constitutionally prescribed mandate for Minnesota.

59. The Secretary is barred from changing the receipt deadline by operation of Article II of the United States Constitution.

60. The Secretary is also barred from changing the date of presidential elections set by Congress.

61. But the consent decree alters the time of election by eliminating the requirement that voters vote on Election Day. This usurps the power of Congress to set the times of elections and conflicts with statutes Congress has enacted governing that question.

62. The consent decree also usurps the power of the Minnesota Legislature to set the manner of conducting elections. Among other things, it provides that ballots received up to eight days after Election Day without a post mark will be counted, at least when there is not clear evidence that the ballot was sent after Election Day.

63. This means that persons who vote after Election Day will have their votes counted if they manage to transfer their ballots to a polling place without clear evidence of the time the vote was cast.

64. Many ballots that arrive at polling placed via the U.S. Postal Service or other delivery service arrive without a post-mark date.

65. All of these votes, cast after Election Day, cannot be constitutionally counted, but the Secretary of State has agreed to count them.

**E. The Consent Decree Harms the Plaintiffs**

66. The Secretary's agreement to count ballots cast after Election Day harms Plaintiffs.

67. All Plaintiffs are registered voters and intend to vote in compliance with federal and state law.

68. Counting votes invalidly cast in violation of federal and state law substantially increases the pool of total votes cast and dilutes the weight of Plaintiffs' votes. More votes will be counted than the law allows to be counted, resulting in paradigmatic vote dilution.

69. In addition, the legal infirmity of the consent decree creates substantial uncertainty about whether persons casting absentee ballots near Election Day will have their votes counted. This uncertainty frustrates Plaintiffs' ability to determine whether to vote in person (and thereby risk exposure to the Coronavirus) or cast absentee ballots (and thereby risk that their votes will not be counted).

70. Further, the Secretary's agreement to violate federal and state law threatens to disenfranchise all Minnesota voters. A procedure for resolving election contests (which the vote-counting process qualifies as) will not satisfy Congress's safe harbor of 3 U.S.C. § 5 unless it is resolved "by laws enacted prior to the day fixed for the appointment of electors." The consent decree is not an enacted law but an executive policy in flat contradiction to State law.

71. Adherence to this policy over and against Minnesota's "enacted" laws creates a clear and present danger that Minnesota's election results will not be accepted under the safe harbor law and therefore will not be accepted by the United States Congress in determining the winner of the presidential election. As the Secretary intends

to conduct the election, Congress will have no obligation to respect the popular vote of Minnesota's electorate.

72. A further risk is created insofar as the Secretary's election deadlines risk placing the resolution of the contest past dates Congress has set for both the safe harbor and the actual vote of the Electoral College. It will remain unknown who wins the state's vote for at least eight days after Election Day, and any contest about the ultimate result is unlikely to reach a conclusion before the safe-harbor deadline or even before the vote of the Electoral College. There is a substantial risk that Plaintiffs' votes will be completely meaningless, if either Minnesota loses its representation in the Electoral College or its asserted results do not qualify for the safe harbor.

73. Plaintiffs will be subject to harms beyond even these above-stated harms because they are pledged electors and have agreed to participate in the Electoral College. Their participation is in jeopardy, as is the value and weight of their Electoral College votes, which may not be counted or may not be treated as binding on the United States Congress.

74. These harms are severe and irreparable.

**COUNT I: THE SECRETARY'S AGREEMENT VIOLATES ARTICLE II BY EXCEEDING THE SECRETARY'S AUTHORITY TO REGULATE TIMES OR MANNER OF PRESIDENTIAL ELECTIONS**

75. The above-stated allegations are incorporated by reference as if fully stated herein.

76. Article II delegates authority to state legislatures and Congress to determine the manner and timing of presidential election.

77. Congress has set a date for the presidential election this year, November 3, 2020, and the Minnesota State Legislature has set a bright-line deadline of 8 p.m. on that date for receipt of all absentee ballots.

78. The Secretary has acted *ultra vires* by entering into an agreement with private plaintiffs changing the receipt deadline for absentee ballots.

79. The extended receipt deadline in the consent decree is contrary to Minnesota State Law setting the receipt deadline as 8:00 p.m. on November 3, 2020, and therefore in conflict with Article II, which vests authority solely in the state legislature to modify the manner and time of elections.

80. The Secretary has exceeded his authority by extending the deadline for receiving absentee ballots.

81. Therefore, the Secretary's agreement violates Article II of the Constitution.

82. An actual controversy exists between Plaintiffs and Defendant regarding the constitutionality of the consent decree.

83. Plaintiffs are entitled to injunctive relief, a declaration of rights under the United States Constitution and any further necessary or proper relief against Defendant pursuant to 28 U.S.C. §§ 2201 and 2202.

## COUNT II: THE SECRETARY'S AGREEMENT VIOLATES FEDERAL STATUTES GOVERNING THE TIMES OF CHOOSING ELECTORS

84. The above-stated allegations are incorporated by reference as if fully stated herein.

85. Article II authorizes only Congress to set the date for presidential elections.

86. Congress has set the date for the presidential election by statute. As applied in the year 2020, Election Day is Tuesday, November 3.

87. The Secretary has agreed to accept votes cast up to eight days after election day, as long as they arrive without a postmark and without clear evidence that the ballot was mailed after Election Day.

88. This agreement violates 3 U.S.C. § 1 because it permits Minnesota voters to vote for president *after* Election Day.

89. An actual controversy exists between Plaintiffs and Defendant regarding the constitutionality of the consent decree.

90. Plaintiffs are entitled to a declaration of rights under the United States Constitution and any further necessary or proper relief against Defendant pursuant to 28 U.S.C. §§ 2201 and 2202.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this court enter judgment against Defendant and grant the following relief:

a. A declaration that the Secretary's agreement to violate Minnesota and federal law is unconstitutional under Article II;

b. A declaration that violate Minnesota and federal law conflicts with federal statutes;

c. Preliminary and permanent injunctions forbidding the Secretary from counting, or authorizing the counting of, ballots received in violation of Minnesota law;

d. Preliminary and permanent injunctions forbidding the Secretary from counting, or authorizing the counting of, ballots received in violation of federal law;

e. Costs and attorneys fees for the prosecution of this case;

f. Any other relief the Court deems necessary or appropriate.

Date: September 22, 2020

Respectfully submitted,

/s/ Danyll W. Foix

DANYLL W. FOIX
(MN Bar 0285390)
DAVID B. RIVKIN*
ANDREW M. GROSSMAN*
RICHARD B. RAILE*
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W.
Suite 1100
Washington, DC 20036
Phone: (202) 861-1596
Fax: (202) 861-1783
dfoix@bakerlaw.com
*Attorneys for Plaintiffs*

NATHAN M. HANSEN
(MN Bar 0328017)
2440 Charles Street North
Suite 242
North St. Paul, MN 55109
Phone: (651) 704-9600
Fax: (651) 704-9604

**pro hac vice* motions forthcoming