## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| JAMES CARSON & ERIC LUCERO,<br><br>    Plaintiffs,<br><br>                v.<br><br>STEVE SIMON, Secretary of State of the State of Minnesota, in his official capacity,<br><br>    Defendant,<br><br>and<br><br>ROBERT LAROSE, TERESA MAPLES, MARY SANSOM, GARY SEVERSON, & MINNESOTA ALLIANCE FOR RETIRED AMERICANS EDUCATIONAL FUND,<br><br>    Proposed Intervenor-Defendants. | Case No. 20-cv-2030 NEB/TNL<br><br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE AS DEFENDANTS** |

## MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
## TO INTERVENE AS DEFENDANTS

Pursuant to Federal Rule of Civil Procedure 24, Proposed Intervenor-Defendants Robert LaRose, Teresa Maples, Mary Sansom, Gary Severson, and Minnesota Alliance for Retired Americans (the "Alliance," and collectively, "Proposed Intervenors") move to intervene as defendants in the above-titled action. Proposed Intervenors have met and conferred with Plaintiffs and Defendant, and all parties consent to intervention.

Plaintiffs James Carson and Eric Lucero have brought claims to collaterally attack a consent decree entered into by Defendant Steve Simon, the Secretary of State of Minnesota (the "Secretary"), and Proposed Intervenors. The state court's approval of that consent decree was not only reasonable but constitutionally required to ensure that all eligible Minnesota voters, including Proposed Intervenors as individuals and the Alliance's organizational members, can safely exercise the franchise in the midst of the coronavirus pandemic. Plaintiffs' current attempt to undermine the Secretary's efforts to protect Minnesota voters during an unprecedented public health crisis poses a clear and direct threat to Proposed Intervenors' rights and legal interests.

For the reasons set forth below, Proposed Intervenors are entitled to intervene in this case as a matter of right under Rule 24(a)(2). Such intervention is needed to safeguard the substantial and distinct legal interests of Proposed

Intervenors, which will otherwise be inadequately represented in the litigation. In the alternative, Proposed Intervenors should be granted permissive intervention pursuant to Rule 24(b). In accordance with Rule 24(c), a proposed Answer is attached as Exhibit 1.

## BACKGROUND

Each year, Minnesota disenfranchises thousands of voters whose completed mail ballots are postmarked on or before Election Day but arrive after 8 p.m. (the "Election Day Receipt Deadline"). In November 2020, as Minnesotans increasingly turn to absentee voting to ensure their health and safety during the pandemic, the risk of disenfranchisement posed by the Election Day Receipt Deadline threatens substantially more voters than ever before.

Proposed Intervenors include the Alliance, a nonprofit that seeks to ensure social and economic justice and full civil rights for its more than 84,000 members; individual voters who are at an increased risk of severe illness or death if exposed to COVID-19; and voters whose ballots have been—or are likely to be—rejected as a result of the Election Day Receipt Deadline.

On May 13, 2020, Proposed Intervenors sued the Secretary in Minnesota state court to enjoin both the Election Day Receipt Deadline and the State's witness signature requirement for mail ballots. On June 16, Proposed Intervenors and the Secretary entered into a consent decree in which the Secretary agreed that

he would enforce neither of the challenged provisions during the August 11 primary (the "August Consent Decree"). On June 18, the Republican Party of Minnesota, the Republican National Committee, and the National Republican Congressional Committee (the "State Court Intervenors") filed a notice of intervention and thereafter filed a series of substantive motions and objections related to the progress of the state court litigation, including a motion to vacate the August Consent Decree. On July 2, Proposed Intervenors filed a motion for temporary injunction seeking essentially the same relief in the August Consent Decree for the November general election. On July 17, Proposed Intervenors and the Secretary filed a stipulation and partial consent decree in which the Secretary agreed not to enforce either of the challenged provisions during the November 2020 general election (the "Consent Decree"). *See* Declaration of Danyll W. Foix ("Foix Decl."), ECF No. 14, Ex. B. The State Court Intervenors filed various objections to the Consent Decree and requested a hearing on their objections. On July 31, the state court held a hearing on all pending motions and objections. On August 3, 2020, Ramsey County District Court Judge Sara Grewing issued an order entering the Consent Decree. *See* Foix Decl., Ex. C.

Pursuant to the Consent Decree, the Secretary agreed to "issue guidance instructing all relevant local election officials to count all mail-in ballots in the November General Election that are otherwise validly cast and postmarked on or

before Election Day but received by 8 p.m. within 5 business days of Election Day." Foix Decl., Ex. B at 10. He further agreed to "issue instructions to include with all absentee and designated mail ballots . . . to inform voters that any absentee or designated mail ballot cast in the November General Election and postmarked on or before Election Day and received by 8 p.m. within 5 business days of Election Day . . . will be counted." *Id.*, Ex. B at 11. Soon thereafter, the Secretary issued guidance to local election officials and voters, informing them of the change in the Election Day Receipt Deadline. *See, e.g.*, *Vote Early by Mail*, Office of Minn. Sec'y of State, https://www.sos.state.mn.us/elections-voting/other-ways-to-vote/vote-early-by-mail (last visited Sept. 25, 2020). Local election officials began printing absentee ballots—including instructions about the postmark deadline—after candidate names were certified on August 28, 2020. *See* Minn. R. 8210.0500; Dave Orrick, *About 100,000 Ramsey County Voters Have Already Asked for Ballots. Be Patient.*, St. Paul Pioneer Press, Aug. 21, 2020, https://www.twincities.com/2020/08/21/about-100000-ramsey-county-voters-have-already-asked-for-ballots-be-patient. And officials began sending those ballots to voters over a week ago, on September 18, 2020. *See* Minn. Stat. § 204B.35. As of that date, over 1 million voters had requested and were sent absentee ballots, a number that the Secretary described as "off the charts." Arielle Mitropoulos, *Minnesota Sees 'Absolute Shattering' of Record for Absentee Ballot Requests*, ABC

News (Sept. 18, 2020), https://abcnews.go.com/Politics/minnesota-sees-absolute-shattering-record-absentee-ballot-requests/story?id=73101334.

Now, more than seven weeks after the Consent Decree was entered, Plaintiffs have filed the present action seeking to enjoin the Secretary from adhering to those portions of the Consent Decree pertaining to the Election Day Receipt Deadline. *See* Complaint ("Compl."), ECF No. 1. Proposed Intervenors—parties to the Consent Decree that Plaintiffs seek to undo—now move to intervene.

## STANDARD OF LAW

Rule 24 is "liberally construed with all doubts resolved in favor of the proposed intervenor." *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir. 2003).

Rule 24(a)(2) provides that "a court must permit anyone to intervene" as of right who:

> (1) files a timely motion to intervene; (2) "claims an interest relating to the property or transaction that is the subject of the action"; (3) is situated so that disposing of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) is not adequately represented by the existing parties.

*Nat'l Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 975 (8th Cir. 2014) (quoting Fed. R. Civ. P. 24(a)(2)). In addition, the Eighth Circuit requires that prospective intervenors demonstrate the existence of an Article III case or controversy. *See*

*Liddell v. Special Admin. Bd.*, 894 F.3d 959, 964 (8th Cir. 2018).[1]

To determine whether a party may be allowed permissive intervention under Rule 24(b), the following "well-established criteria must be met": "(1) []the motion is timely; (2) [] the movant's claim shares a question of law or fact in common with the main action; and (3) [] intervention will [not] unduly delay or prejudice adjudication of the original parties' rights." *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 266 (D. Minn. 2017). "In addition, although 'only a minor variable in the Rule 24(b) decision calculus,' the adequacy of protection afforded to the prospective intervenors by the existing defendants is a factor." *Id.* (quoting *Barnett*, 317 F.3d at 787).

## ARGUMENT

I. **Proposed Intervenors have standing.**

"A prospective intervenor . . . must satisfy the familiar requirements of Article III standing. The intervenor must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Liddell*, 894 F.3d at 964 (quoting

---

[1] The U.S. Supreme Court's decision in *Town of Chester v. Laroe Estates, Inc.* suggests that Article III standing need not be established where, as here, applicants move to intervene as *defendants* and do not seek "relief that is different from that which is sought by a party with standing." 137 S. Ct. 1645, 1651 (2017). But because the Eighth Circuit has not clearly articulated as much—and because Proposed Intervenors readily satisfy Article III—Proposed Intervenors establish standing in this motion out of an abundance of caution.

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). In evaluating standing on intervention, courts "construe a motion to intervene in favor of the prospective intervenor, accepting all material allegations as true. In evaluating whether [proposed intervenors] have standing, we accept as true the movants' allegations of injury, causation, and redressability, unless the pleading reflects a 'sham' or 'frivolity.'" *Id.* at 965 (citation omitted) (quoting *Kozak v. Wells*, 278 F.2d 104, 109 (8th Cir. 1960)).

Proposed Intervenors readily satisfy Article III standing. At the outset, they have a concrete, particularized, and legally protected interest in upholding the Consent Decree, which is a negotiated contract approved by a state court judgment validly entered under state law and thus entitled to full faith and credit. *See* 28 U.S.C. § 1738; *cf. Sansom Comm. ex rel. Cook v. Lynn*, 735 F.2d 1535, 1539 n.7 (3d Cir. 1984) (concluding that party's "participation in the [] Consent Decree gives it standing to bring this appeal").

Next, the Consent Decree protects Proposed Intervenors' constitutional right to vote and to have that vote counted. Uncontested evidence presented before the state court showed that the Election Day Receipt Deadline threatens to disenfranchise Proposed Intervenors and, in the case of the Alliance, its members, due to mail delays that are no fault of their own, and that the Consent Decree is necessary to avoid direct harm to them and to Minnesota voters more generally.

*See* Foix Decl., Ex. C at 19–25 (state court finding that Proposed Intervenors are "likely to succeed" on the merits of their motion for temporary injunction as to Election Day Receipt Deadline). Potential infringement of constitutional rights is a legally cognizable interest sufficient to constitute injury in fact for purposes of intervention. *See, e.g., ACLU of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1092–93 (8th Cir. 2011).

Finally, Plaintiffs' requested relief would require the Alliance to divert time and resources from its other activities to remedy the suppressive and disenfranchising effects that an injunction would have on Minnesota voters. Specifically, the Alliance would have to engage in efforts to ensure that its members are not disenfranchised by the Election Day Receipt Deadline—particularly now, given that enjoining the Consent Decree would lead to widespread confusion and mixed messaging since all public guidance, notices, and printed materials that accompany absentee ballots reflect the dictates of the Consent Decree. Such an expenditure would necessarily divert resources from the Alliance's other pre-election activities, such as its robust public policy and issue advocacy work. Courts have regularly concluded that diversions of resources constitute cognizable harms to organizations. *See, e.g., Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015) (finding "concrete and particular" injury where plaintiffs alleged that but for defendants' conduct, they "would be

able to allocate substantial resources to other activities central to [their] mission[s]" (alterations in original) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982))); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (concluding "new law injure[d] the Democratic Party by compelling the party to devote resources" that it would not have needed to devote absent the new law), *aff'd*, 553 U.S. 181 (2008); *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law "require[d] Democratic organizations . . . to retool their [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc).

Harm to these protected interests is clearly imminent and causally connected to the relief Plaintiffs seek, for these interests will be implicated—and the consequent harms will result—*only if* the Consent Decree is enjoined. *See Tarek ibn Ziyad Acad.*, 643 F.3d at 1093 (holding that intervenor satisfied traceability requirement where defendant would have been compelled to cause alleged constitutional injury to intervenor if plaintiff prevailed). Accordingly, a decision denying Plaintiffs' requested relief would redress the potential for injury to Proposed Intervenors.

In short, Proposed Intervenors have standing to intervene as defendants in this action.

## II. Proposed Intervenors satisfy Rule 24(a)(2)'s requirements for intervention as of right.

Proposed Intervenors satisfy each of the remaining four requirements of Rule 24(a)(2).

*First*, the motion is timely. Plaintiffs filed their complaint on September 22, 2020. *See* Compl. This motion follows three days later, before any significant action has occurred in the case. There has been no delay, and there is no possible risk of prejudice to the other parties. *See Taylor v. Sw. Bell Tel. Co.*, 251 F.3d 735, 741 (8th Cir. 2001). Therefore, the motion is timely. *See, e.g.*, *id.* (motion to intervene timely where applicant "acted promptly and filed its motion to intervene eleven days after" learning of dispute); *North Dakota v. Heydinger*, 288 F.R.D. 423, 429 (D. Minn. 2012) (motion to intervene timely even when filed one year after amended complaint because parties had not yet proceeded to discovery); *Planned Parenthood Minn., N.D., S.D. v. Daugaard*, 836 F. Supp. 2d 933, 940 (D.S.D. 2011) ("[T]he court finds the motion to intervene is timely because the time between filing the complaint and the motion to intervene was slight, the litigation had not progressed to a substantial degree, and applicants had a legitimate reason for delay.").

*Second* and *third*, Proposed Intervenors have "a recognized interest" that is both "legally protected," *Nat'l Parks Conservation Ass'n*, 759 F.3d at 975 (quoting *Mausolf v. Babbitt*, 85 F.3d 1295, 1300 (8th Cir. 1996)), and "bound up with the

subject matter of the litigation" such that Proposed Intervenors' ability to protect their interests will be impaired or impeded by disposition in their absence. *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 840 (8th Cir. 2009). Plaintiffs seek to overturn a state court order that entered a Consent Decree to which Proposed Intervenors are parties. A reversal of the Consent Decree will indisputably impede the ability of Proposed Intervenors to realize their interest in that agreement. *See Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081–82 (8th Cir. 1999) (finding interest requirement "easily satisfie[d]" where "[t]he disposition of the lawsuit . . . may require resolution of legal and factual issues bearing on the validity of [] agreements" in which proposed intervenor had interests).

Beyond Proposed Intervenors' interests in upholding the Consent Decree, they also risk infringement of their constitutional right to vote if Plaintiffs' requested relief is granted. Unrebutted evidence in the state court action showed that the Election Day Receipt Deadline imposes a severe burden on voters, particularly during a global pandemic. If Plaintiffs succeed and the state court order is overturned, then Minnesota voters will be disenfranchised through no fault of their own. Proposed Intervenors—both individual voters who risk disenfranchisement and the Alliance, which is dedicated to promoting the franchise and ensuring the full constitutional rights of its members—have a

cognizable interest in asserting their rights and the rights of their members who might lose the ability to have their votes counted. *See, e.g., Crawford*, 472 F.3d at 951 ("The Democratic Party [] has standing to assert the rights of those of its members who will be prevented from voting by the new law."); *Ohio Org. Collaborative v. Husted*, 189 F. Supp. 3d 708, 726 (S.D. Ohio 2016) (political party "established an injury in fact" where "the challenged provisions will make it more difficult for its members and constituents to vote"), *rev'd on other grounds sub nom. Ohio Democratic Party v. Husted*, 834 F.3d 620 (6th Cir. 2016).

Moreover, as discussed in Part I *supra*, the disruptive and disenfranchising effects of Plaintiffs' action would require Proposed Intervenors to divert resources to address invalidation of the Consent Decree—another legally protected interest that is implicated, and might be impaired, by Plaintiffs' claims. Proposed Intervenors therefore satisfy the second and third requirements of Rule 24(a)(2).

*Fourth*, Proposed Intervenors' interests are not adequately represented by the Secretary. "A proposed intervenor [] need only 'carry a "minimal" burden of showing that their interests are inadequately represented by the existing parties.'" *Nat'l Parks Conservation Ass'n*, 759 F.3d at 976 (quoting *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 999 (8th Cir. 1993)). Although that burden increases "when a party already in the suit has an obligation to represent the interests of the party seeking to intervene," Proposed Intervenors can

nevertheless satisfy it by "showing that [their] interests actually differ from or conflict with the government's interests." *Barnett*, 317 F.3d at 785–86 (quoting *United States v. Union Elec. Co.*, 64 F.3d 1152, 1168 (8th Cir. 1995)); *accord Union Elec. Co.*, 64 F.3d at 1169 ("Even where such a presumption of adequate representation arises on this basis, however, it may be rebutted by a showing that the applicant's interest cannot be subsumed within the shared interest of the citizens of the state.").

Such is the case here. Courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors," *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003), and this is a case where "the government's representation of the public interest [is] not [] 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)). Instead, Proposed Intervenors have specific interests implicated by the litigation that they cannot rely upon the Secretary to adequately protect. Although Proposed Intervenors and the Secretary were ultimately able to reach an agreement in state court, Proposed Intervenors *had to sue* the Secretary to obtain that agreement to protect their constitutional rights in the upcoming November election. The Consent Decree was the product

of negotiation and a balancing of the distinct interests of Proposed Intervenors and the Secretary. Accordingly, "there is no assurance that the state will continue to support all the positions taken in" the Consent Decree, and "if the case is disposed of by settlement rather than by litigation, what the state perceives as being in its interest may diverge substantially from" the interests of Proposed Intervenors. *Mille Lacs Band of Chippewa Indians*, 989 F.2d at 1001.

As one court recently explained while granting intervention under similar circumstances,

> Although Defendants and the Proposed Intervenors fall on the same side of the dispute, Defendants' interests in the implementation of the [challenged law] differ from those of the Proposed Intervenors. While Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws, the Proposed Intervenors are concerned with ensuring their party members and the voters they represent have the opportunity to vote in the upcoming federal election . . . and allocating their limited resources to inform voters about the election procedures. As a result, the parties' interests are neither "identical" nor "the same."

*Issa v. Newsom*, No. 2:20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (citation omitted). Here, similarly, while the Secretary has an undeniable interest in defending both his plans for the November election and his inherent powers as a state executive, Proposed Intervenors have different focuses: ensuring that they and their members will be have meaningful and safe opportunities to cast ballots, and ensuring that the Alliance's limited resources are not diverted. *See Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL

2042365, at *3 (D. Nev. Apr. 28, 2020) (concluding that "Proposed Intervenors . . . have demonstrated entitlement to intervene as a matter of right" where they "may present arguments about the need to safeguard [the] right to vote that are distinct from Defendants' arguments"). Because Proposed Intervenors cannot rely on the Secretary or anyone else in the litigation to protect these distinct, parochial interests, they have satisfied the fourth requirement and are entitled to intervention as of right under Rule 24(a)(2). *See id.*; *Issa*, 2020 WL 3074351, at *4.

**III. Alternatively, Proposed Intervenors satisfy Rule 24(b)'s requirements for permissive intervention.**

Even if this Court were to find Proposed Intervenors ineligible for intervention as of right, Proposed Intervenors easily satisfy the requirements for permissive intervention under Rule 24(b). District courts have "broad flexibility" to allow permissive intervention. *Franconia Minerals*, 319 F.R.D. at 266. As explained above, permissive intervention is appropriate where (1) the motion is timely; (2) the movant's claim shares a question of law or fact in common with the main action; (3) intervention will not unduly delay or prejudice adjudication of the original parties' rights, and (4) the existing parties do not adequately protect the proposed intervenors. *Id*.

For the reasons discussed in Part II *supra*, Proposed Intervenors' motion is timely. Moreover, Proposed Intervenors' defenses share common questions of law and fact with Plaintiffs' complaint; indeed, they are "directly responsive" to

Plaintiffs' claims because Proposed Intervenors seek to uphold the very Consent Decree that Plaintiffs "seek to overturn." *Id.* at 268 (quoting *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002)); *see also* Ex. 1. Therefore, Proposed Intervenors' "claims and the main action obviously share many common questions of law and perhaps of fact." *Id.* (quoting *Minn. Pub. Int. Rsch. Grp. v. Selective Serv. Sys.*, 557 F. Supp. 923, 924 (D. Minn. 1983)). And, as explained in Part II *supra*, Proposed Intervenors' interests in this case are not adequately represented by the Secretary.

Lastly, intervention will result in neither prejudice nor undue delay. Proposed Intervenors have an undeniable interest in a swift resolution of this action, to ensure that the Consent Decree is implemented and all Minnesota voters are able to cast ballots and have their votes counted. Given the legal and factual shortcomings of Plaintiffs' claims, Proposed Intervenors are confident that their intervention in this case, and the filings that will follow, will result in expeditious resolution of this litigation.

**CONCLUSION**

For the reasons stated above, Proposed Intervenors respectfully request that the Court grant their motion to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, permit them to intervene under Rule 24(b).

DATED this 25th day of September, 2020

**GREENE ESPEL PLLP**

By:     s/ Sybil L. Dunlop
    Sybil L. Dunlop, Reg. No. 390186
    Samuel J. Clark, Reg. No. 0388955
    222 South Ninth Street, Suite 2200
    Minneapolis, Minnesota 55402
    Phone: (612) 373-0830
    Fax: (612) 373-0929
    Email: SDunlop@GreeneEspel.com
          SClark@GreeneEspel.com

    Marc E. Elias, Esq.*
    Amanda R. Callais, Esq.*
    **PERKINS COIE LLP**
    700 Thirteenth Street NW, Suite 800
    Washington, D.C. 20005-3960

    Abha Khanna, Esq.*
    Jonathan P. Hawley, Esq.*
    **PERKINS COIE LLP**
    1201 Third Avenue, Suite 4900
    Seattle, Washington 98101-3099

    Will M. Conley, Esq.*
    **PERKINS COIE LLP**
    33 East Main Street, Suite 201
    Madison, Wisconsin 53703-3095

    *Attorneys for Proposed Intervenor-Defendants Robert LaRose, Teresa Maples, Mary Sansom, Gary Severson, and Minnesota Alliance for Retired Americans*

    *Pro hac vice applications forthcoming