**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| JAMES CARSON & ERIC LUCERO,<br><br> Plaintiffs,<br><br>    v.<br><br>STEVE SIMON, Secretary of State of the State of Minnesota, in his official capacity,<br><br> Defendant,<br><br>and<br><br>ROBERT LAROSE, TERESA MAPLES, MARY SANSOM, GARY SEVERSON, & MINNESOTA ALLIANCE FOR RETIRED AMERICANS EDUCATIONAL FUND,<br><br> Intervenor-Defendants. | Case No. 20-CV-2030 (NEB/TNL)<br><br>**INTERVENOR-DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF EXPEDITED MOTION TO CERTIFY STATE LAW QUESTION AND STAY PROCEEDINGS** |

# INTRODUCTION

Intervenor-Defendants Robert LaRose, Teresa Maples, Mary Sansom, Gary Severson, and Minnesota Alliance for Retired Americans Educational Fund ("Intervenors") ask this Court to:

(1) Pursuant to Minnesota Statutes section 480.065, subdivision 3, certify the following question to the Minnesota Supreme Court:

> *As a matter of Minnesota law, are presidential electors nominated and certified pursuant to Minnesota Statutes section 208.03 in privity with their corresponding presidential candidate and political party such that they are bound by a stipulation signed by these entities that waived any further challenge to a consent decree governing the administration of an election?*

and

(2) Enter an Order staying this case until such time as the Minnesota Supreme Court has either answered or declined to answer the certified question.

Intervenors request this relief because the matter to be resolved—whether Plaintiffs James Carson and Eric Lucero are in privity with the Republican Party of Minnesota, Republican National Committee, and National Republican Congressional Committee (the "Republican Committees") and Donald J. Trump for President, Inc. (the "Trump Campaign"), all of which signed a stipulation waiving the right to launch any further collateral attacks on the consent decree governing the November 2020 election (the "Consent Decree")—is both a threshold issue in this case and dispositive of Plaintiffs' action. If Plaintiffs are in privity with the

1

Republican Committees and the Trump Campaign, then they too are bound by the stipulation, and this suit is barred.

The question of privity is one of state law. Here, assessment of the privity issue requires an interpretation of not only Minnesota privity law, but also the role of presidential electors under state law and their connections to their respective candidate and political party. *See, e.g.*, Minn. Stat. §§ 208.03, 208.43. While the privity inquiry is fact-specific, the Minnesota Supreme Court is uniquely suited to undertake it—not only is that court the ultimate arbiter of issues of Minnesota law, but it entered the stipulation that is at issue here.

Because the privity question in the context of presidential electors is both dispositive of this litigation and novel under Minnesota law, it is appropriate for certification. Moreover, principles of judicial economy as well as preservation of the parties' rights support a stay pending the requested determination.

## FACTUAL BACKGROUND

This memorandum includes only the factual background relevant to the instant certification request. A more detailed background of this matter is included in the Court's order denying Plaintiffs' motion for preliminary injunction. *See* ECF No. 59, at 2–18.

### I. The Stipulation

In May, Intervenors filed suit in state court against Defendant Steve Simon,

the Minnesota Secretary of State (the "Secretary"), arguing that the State's Election Day receipt deadline for mail ballots violates the U.S. and Minnesota Constitutions. *See* Declaration of Danyll W. Foix ("Foix Decl."), ECF No. 14, Ex. A. The Republican Committees sought and were ultimately granted intervention in the state court action "[o]n behalf of their supported candidates[ and] voters," citing their interest in "helping Republican candidates and voters" by "support[ing] Republican candidates for office." Declaration of Abha Khanna ("Khanna Decl."), ECF No. 39, Ex. 13, at 8, 12.

On July 17, Intervenors and the Secretary filed the proposed Consent Decree, which provided that ballots postmarked by, and received within seven days of, Election Day would be counted. *See* Foix Decl. Ex. B. Although the Republican Committees filed various objections to the Consent Decree, *see* Khanna Decl. Ex. 12, the state court entered the Consent Decree after analyzing it under state and federal law. *See* Foix Decl. Ex. C.

The Republican Committees appealed, and their appeal was ultimately consolidated with a related case in which the Trump Campaign had also intervened. *See NAACP Minn.-Dakotas Area State Conf. v. Simon*, No. A20-1041 (Minn.). Although the Republican Committees were granted accelerated review in the Minnesota Supreme Court, they abruptly elected to voluntarily withdraw their appeal. On August 18, the parties in both appeals signed a stipulation of dismissal,

in which both the Republican Committees *and* the Trump Campaign "waive[d] the right to challenge in any other judicial forum the August 3, 2020 Orders and the August 3, 2020 Stipulations and Partial Consent Decrees that formed the basis for the above-captioned consolidated appeals"—in other words, both the Consent Decree and the state court's related orders. Khanna Decl. Ex. 15, at 2–3. The Minnesota Supreme Court then dismissed the appeals pursuant to the stipulation. *See id.* Ex. 16, at 2.

## II. Plaintiffs' Suit

Nearly two months after the state court entered the Consent Decree, and five weeks after the parties signed the stipulation, Plaintiffs filed this lawsuit, alleging that the Consent Decree violates the U.S. Constitution and federal law. *See* ECF No. 1. This Court denied Plaintiffs' motion for preliminary injunction on standing grounds and, after they noticed their appeal and filed a motion for injunction pending appeal, again reached the same conclusion. *See* ECF Nos. 59, 71. Because the Court concluded that Plaintiffs' lack of standing deprived it of jurisdiction to entertain their claims, it did not address the privity issue. *See* ECF No. 59, at 37–38.

On October 29, the U.S. Court of Appeals for the Eighth Circuit reversed this Court's denial of Plaintiffs' motion for preliminary injunction. *See* ECF No. 73. Although the Eighth Circuit concluded that Plaintiffs had standing as candidates and addressed their claims on the merits, *see id.* at 6–13, it did not address whether

4

Plaintiffs' suit is barred by the stipulation.

## STANDARD OF LAW

Minnesota has adopted the Uniform Certification of Questions of Law Act (the "QLA"). *See* Minn. Stat. § 480.065. Pursuant to the QLA, a federal court may certify a question of law to the Minnesota Supreme Court "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this state." *Id.* § 480.065, subd. 3.

> If a federal court certifies a question of law, the order must include:
>
> (1) the question of law to be answered;
>
> (2) the facts relevant to the question, showing fully the nature of the controversy out of which the question arose;
>
> (3) a statement acknowledging that the supreme court of [Minnesota], acting as the receiving court, may reformulate the question; and
>
> (4) the names and addresses of counsel of record and parties appearing without counsel.

*Id.* § 480.065, subd. 6(a).

Whether to certify a question under the QLA is a question committed to the federal courts' "sound discretion." *Friedlander v. Edwards Lifesciences, LLC*, No. 16-cv-1747 (SRN/KMM), 2016 WL 7007489, at *1 (D. Minn. Nov. 29, 2016) (quoting *Lehman Brothers v. Schein*, 416 U.S. 386, 391 (1974)). The key consideration is whether the federal court is "genuinely uncertain about a question of state law."

*Johnson v. John Deere Co.*, 935 F.2d 151, 153 (8th Cir. 1991) (quoting *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 426 (D.C. Cir. 1988)).

## ARGUMENT

I. **This Court should certify the dispositive privity question to the Minnesota Supreme Court.**

   A. **The privity question is dispositive of the instant action.**

There can be no dispute that the question of privity is dispositive of the instant action. Under governing Minnesota law, absent fraud, a valid judgment entered by agreement or consent has the same preclusive effect "as if it had been rendered after contest and full hearing and is binding and conclusive upon the parties *and those in privity with them*." *Hentschel v. Smith*, 153 N.W.2d 199, 203 (Minn. 1967) (emphasis added) (quoting *Pangalos v. Halpern*, 76 N.W.2d 702, 706 (Minn. 1956)). Therefore, if Plaintiffs are in privity with the Republican Committees or the Trump Campaign, or both, then the stipulation precludes Plaintiffs from challenging the Consent Decree "in any other judicial forum"—including this one. Khanna Decl. Ex. 15, at 2. Since Plaintiffs seek a judgment that the Secretary's agreement to enter the Consent Decree "violate[s] Minnesota and federal law," ECF No. 1, at 15, this lawsuit would be barred by an affirmative privity determination.

   B. **There is no controlling appellate decision, constitutional provision, or Minnesota statute that answers the privity question.**

It is undisputed that privity is an issue of state law. *See Aldrich v. Aldrich*, 378

U.S. 540, 543 (1964) (per curiam) (finding that judgment is binding on both party and those whom state law considers to be in privity with party); *Windsor Craft Sales, LLC v. VICEM Yat Sanayi ve Ticaret AS*, Civil No. 10-297 ADM/JJG, 2012 WL 3776462, at *2 (D. Minn. Aug. 30, 2012) (applying Minnesota law to privity question).

Here, not only does the privity question require an interpretation of state law, but it also intersects with the meaning and function of Minnesota statutes that govern the nomination, certification, and function of presidential electors. *See, e.g.*, Minn. Stat. § 208.03 (governing the "nominat[ion]" and "certif[ication]"of presidential electors by "major political part[ies]"); *id.* § 208.43 (requiring electors to pledge "to mark [their] ballots for president and vice president for the nominees for those offices of the party that nominated" them); *id.* § 208.46(c) (indicating that elector who "presents a ballot marked in violation of the elector's pledge" is replaced as matter of law). The Minnesota Supreme Court has never considered these elector statutes in the context of privity, and its interpretation of these provisions will affect whether presidential electors are in privity with the presidential candidate to whom they are pledged and the parties who certified them to serve as electors.[1]

Finally, "the Minnesota Supreme Court has directed that 'privity must be determined by the facts of each case,'" and here, the Minnesota Supreme Court is

---

[1] Notably, while Plaintiffs have claimed standing as both individual voters *and* candidates for the office of elector, *see, e.g.*, ECF No. 44, at 13–17, the Eighth Circuit held only that Plaintiffs have standing because "Electors have standing as candidates." ECF No. 73, at 7.

uniquely positioned to assess those facts. *Benson v. Hackbarth*, 481 N.W.2d 375, 377 (Minn. Ct. App. 1992) (quoting *Johnson v. Hunter*, 447 N.W.2d 871, 874 (Minn. 1989)). The Minnesota Supreme Court granted the Republican Committees accelerated review of their appeal of the Consent Decree, and dismissed that appeal pursuant to the stipulation signed by them and the Trump Campaign. *See* Khanna Decl. Ex. 16, at 2. The Minnesota Supreme Court therefore has first-hand knowledge of the relevant facts.

## II. This Court should stay this matter pending review of the certified question.

Courts have the inherent power to stay proceedings of an action to control their dockets, conserve judicial resources, and provide just determinations of pending cases. *Kemp v. Tyson Seafood Grp., Inc.*, 19 F. Supp. 2d 961, 964–65 (D. Minn. 1998). "A district court has broad discretion to stay proceedings" under such circumstances. *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 816 (8th Cir. 2006).

Here, the Court should exercise its discretion to preserve judicial resources and protect the parties' rights. Whether Plaintiffs can lawfully pursue this action—which risks disenfranchisement of Minnesota voters whose ballots are postmarked by November 3, but received after 8 p.m. on Election Day—turns upon a threshold question of Minnesota state law. This question should be reached and answered before Plaintiffs are permitted to challenge the Consent Decree. Indeed, allowing

Plaintiffs to proceed on the merits of their claims *before* this critical question is addressed would result in the potentially unnecessary expenditure of judicial resources and even the disenfranchisement of Minnesota voters by way of a lawsuit initiated by improper parties.

Courts in this District have not hesitated to stay proceedings pending review of certified questions by the Minnesota Supreme Court for precisely these reasons. *See., e.g.*, *Savig v. First Nat'l Bank of Omaha*, Civil No. 09-132 (JNE/RLE), 2009 WL 1955476, at *9–10 (D. Minn. July 6, 2009) (staying matter pending resolution of certified question). This Court should do the same here.

## CONCLUSION

Plaintiffs seek to enjoin the Secretary from "counting, or authorizing the counting of, ballots received in violation of" Minnesota and federal law. ECF No. 1, at 15. Such an injunction would result in the disenfranchisement of Minnesota voters who relied on and complied with the Secretary's instructions for this election. Those instructions, in turn, flowed directly from the Consent Decree, which the Republican Committees and the Trump Campaign expressly relinquished their ability to further challenge. Accordingly, the threshold question of whether Plaintiffs' privies waived their right to bring this lawsuit must be addressed. In light of this case's procedural history, as well as the fact that the privity determination implicates an intersection of state election law and common law, the Minnesota

Supreme Court is the proper body to adjudicate this issue. Intervenors respectfully request that the Court certify this critical question and stay these proceedings pending review.

DATED this 3rd day of November 2020.

**GREENE ESPEL PLLP**

By:     s/ Sybil L. Dunlop
    Sybil L. Dunlop, Reg. No. 390186
    Samuel J. Clark, Reg. No. 0388955
    Caitlinrose H. Fisher, Reg. No. 0398358
    222 South Ninth Street, Suite 2200
    Minneapolis, Minnesota 55402
    Phone: (612) 373-0830
    Fax: (612) 373-0929
    Email: SDunlop@GreeneEspel.com
           SClark@GreeneEspel.com
           CFisher@GreeneEspel.com

    Marc E. Elias, Esq.*
    Amanda R. Callais, Esq.*
    **PERKINS COIE LLP**
    700 Thirteenth Street NW, Suite 800
    Washington, D.C. 20005-3960

    Abha Khanna, Esq.*
    Jonathan P. Hawley, Esq.*
    **PERKINS COIE LLP**
    1201 Third Avenue, Suite 4900
    Seattle, Washington 98101-3099

Will M. Conley, Esq.*
**PERKINS COIE LLP**
33 East Main Street, Suite 201
Madison, Wisconsin 53703-3095

*Attorneys for Intervenor-Defendants Robert LaRose, Teresa Maples, Mary Sansom, Gary Severson, and Minnesota Alliance for Retired Americans Educational Fund*

*Pro hac vice